on behalf of the defendant, Apolli, I hereby declare that the defendant, Apolli, is guilty I would like to reserve four minutes for rebuttal. This case presents the court with a question of whether qualified immunity applies to protect a lay deputy who purportedly delayed in checking on an inmate for five to seven minutes after a fellow inmate told him the inmate was not looking good, and who purportedly did not check on him for 45 minutes during the time that he was in his cell. In our view, this does not rise to the level of an Eighth Amendment claim to begin with, but most certainly, if the court even were to find a question about that, there is no clearly established law that's been identified in any of the briefs that imposes liability in these factual circumstances. First of all, in terms of the Eighth Amendment serious medical claim, it's important to understand our argument. We're not saying once the inmate is found to be unresponsive, that doesn't amount to a serious medical risk objectively, but that's really looking at the facts with the benefit of hindsight, which of course the Supreme Court and this Court has repeatedly said we're not permitted to do in analyzing these claims. An inmate who is sick and has a fever does not present a serious risk of medical harm, and that kind of condition is routinely treated in the jail without calling medical assistance in in the first instance. And I'm not aware of any case from this circuit, from the Supreme Court, where complaining of flu-like symptoms presents a serious medical risk. Are you arguing that foaming at the mouth and all that is a flu-like symptom? I'm saying a slight foam at his mouth and a minor delay, I am saying that until the deputy got to the cell... You're inserting the word slight, and from the record, Howard, who reported this to the guard, did not say slight foaming. He said that he was foaming, and I think he said pinkish, and he was gurgling and doing all of this, which didn't sound like... Right. This Court has actually dealt with the question of foaming at the mouth in other cases, and that is in the... I want to say the Blackmore case, I'll find it in a minute, I apologize. No, Watkins, 273 F3rd 82. And there, the officers saw a pink foamy drool and a white speck near the mouth, and that also was a case where an inmate had ingested drugs. I think what's important here is the officer had no way of suspecting, particularly given the facts that the plaintiff keeps emphasizing, this was an inmate who never showed any problems and so forth, he was behaving well in the prison. There's no way that the officer would have suspected or thought, oh my gosh, he's maybe ingested drugs, which that foaming may be a sign of. Let me just pose one other thing. I think there's testimony, or the record suggests that the officer had gone by the cell a few minutes earlier, the person appeared to be resting comfortably, and then a few minutes later there's this, these symptoms that the inmate described. Wouldn't the sudden onset of those type of symptoms provide a basis for assuming that it should have suggested a need for medical help to the officer in light of the change in symptoms fairly quickly? I think there's two points I want to make in terms of the facts, both in terms of the Eighth Amendment claim and then I want to talk about what the case law says. The officer is thinking this is a guy with a flu, he goes by, as you say, he's resting, that's consistent with having a flu, there doesn't seem to be anything wrong, and then an inmate comes and says, geez, he isn't looking too good, he's heavy snoring, it's a gurgling sound, and there's this pink foam. Then we have a very short delay, taking the facts as the plaintiff presents them, five to seven minutes. That's a very minor delay. I was rereading the cases that have been cited, particularly in the reply brief, but also the cases cited in the plaintiff's brief last night. I could not find any case in which a delay of five to seven minutes was deemed actionable under the Eighth Amendment, and in fact, most of the cases are dealing with a half hour was the shortest and the symptoms were much, much worse, the person had been vomiting, the person, you know, all sorts of things, and many of the cases, symptoms have gone on for days, and medical attention has been requested for days. In one of the cases, the person is in a padded cell, and even when the psychologist comes and asks, open the cell, this person needs treatment, there's a delay. This case is different. It's a very minor delay, and immediately when the deputy gets to the cell, the deputy is trying to, you know, rouse the guy, he clearly is concerned, and when he can't rouse the guy, uses the cold blue to call for help. So the standard to be applied in a general way is what the reasonable and reasonable expectations of a guard or a prison deputy in this situation would expect, the reasonable expectations of the guard, is that the best way to make the general question or the general standard that we should ask ourselves? Right. I mean, what the Eighth Amendment language is, is deliberate indifference to what is serious medical risk, and as the court knows, that has an objective component and a subjective component. And it is in this case important that you're in a jail, that you have a lay deputy who has lots of things going on, and who gets a report about somebody who has been exhibiting flu-like symptoms, no knowledge that, or suspicion that there would have been ingestion of heroin. Up till the time of the warning from the inmate, there would be nothing whatsoever that would indicate to the guard that this person was having a real substantial event in his life. And then the question becomes, that background being present, and the last thing that happened was that the guard had been by there and looked and the person was asleep, that your position is in that situation, a normal, reasonable person wouldn't suspect a life event that was about to occur. That's the bottom line. Correct. And you say that is what, the way we should judge the case. Correct. So your position would be that, relative now to the subjective component, the point at which he actually perceived the risk, that point doesn't occur until he's at the cell. Correct. Correct. Once he is in the cell, then he perceives the risk, and of course he acts immediately. Now plaintiff thinks he shouldn't have tried to rouse him, he should have called for help immediately, but that's a question of judgment and certainly not rising to the level of an Eighth Amendment claim, or even a gross negligence claim under the state analysis. And the case law from this court is very supportive of that. In fact, in one of the cases where there was evidence that someone might have taken drugs and did have the pink foaming at the mouth, the officer did not get medical attention and the circumstances were much worse. So at a minimum, Deputy Berlinga should be cloaked with qualified immunity. That's what the Supreme Court has said and it's recently said even more strongly, I think, than some of the cases in the past, that when you're analyzing the body of law that would put somebody on notice of what they're supposed to do, you have to look for a firm, clear body of law that makes it obvious a mistake, even a mistake about what your obligation is, is not actionable under qualified immunity. And in this case, if you look at the body of law from the U.S. Supreme Court, this circuit, even if you include the district court opinions and the opinions from other circuits, which it's questionable whether Plumhoff says you're supposed to consider, there is no law that would say a deputy in these circumstances with such a minor delay could have known that that would be deemed to rise to the level of an Eighth Amendment constitutional claim. And thus, it seems to me the district court's decision should be reversed on that ground. I see that my red light is on. I'm happy to answer more questions, but if not, perhaps I'll save the rest of my time for rebuttal. May it please the Court, Neal J. Walensky on behalf of the Plaintiff of the Estate of Jesse Good. The district court got this exactly right, that's our position, and this should be affirmed. All through this, I don't believe, I've briefed it this way, I've listened to the argument, and will submit again, they have not conceded the facts as they're supposed to do. The judge found that there was a serious question of fact about what Berlinga did when he was told to go check on this prisoner. Is there a serious question of fact as to how long it took him from the time he was told about the foaming at the mouth and the time he got to the cell? Yes, well, I think there's two, this is where I don't think they've conceded the facts. The judge based his decision saying Berlinga says that when he was told he went right to the cell. So there was no delay according to Berlinga. According to the affidavits... My question is, the way at least it's been presented here, that the defendant says, let's assume the five to seven minutes that the plaintiff says was the time lapse. So my question is, if we assume the five to seven minutes, then what in terms of factual dispute? The factual dispute is not after the delay of the five to seven minutes. No, that's not really my question. Okay, I'm sorry, I'm not understanding the question. The question before us really is, if we take the facts as you say they are, and so we say there was a five to seven minute delay from the time Mr. Berlinga was told about the condition of the inmate in the cell and the time that he went to the cell to investigate. If we assume it was five to seven minutes as the plaintiff says that it was, then are there other factual disputes that would stand in the way of our being able to make a legal determination here? No, I don't think there's other factual disputes. Okay, so the question would be, under the circumstances of what Berlinga was told, is there clearly established law that says that he should have gone faster? That is correct, because Good was in dire distress. He is gurgling, he's not talking, his color is bad, and he was asked to check and he delayed checking. Under the Farmer v. Brennan test, which is sort of the one we all go by, and I don't think there's any question about the objective component, but looking at the subjective component of that test, what is the evidence in this record that Berlinga knew, perceived, that this was a serious risk and disregarded it? Can I answer a little bit? I'm going to quote from Blackford v. Kalamazoo County, 390 Federal 3rd 890 6th Circuit, 2004. If the seriousness of a prisoner's need for medical needs is obvious even to a lay person, a constitutional violation may arise. If you're told that this person is gurgling, their color is bad, they're not talking, and you need to go check on them, you can't just put your head in the sand and say, I didn't realize that. Counsel, how long before this guard was informed by the inmate, had he actually personally viewed the inmate in his cell? Approximately how long before? There's a factual dispute about that, because the question of, he says that he had viewed it about 4.15 and then about 9 minutes later, 7 or 8 minutes later, he was told by Howard. The affidavits have a different... What are the facts that contest what he... The affidavits of Howard in short, I mean of Lofton in short. And they sign an affidavit that he is lying when he says it was approximately 9 minutes beforehand? Well, the affidavits don't, they state that there was a factual dispute about 5 to 7 minute delay from the time... I'm not talking about that delay. Right. What I'm talking about is the amount of time it had been that had passed before he was so advised by the inmate that he had actually seen the inmate in his cell asleep. If you checked on... He says he made his rounds at around 4.15, but the affidavits... Is there a basis for saying he's lying about that? That he made the rounds at 4.15? No. I don't believe so, but... He says he made the rounds... There's a basis to... He looked in the cell. His purpose was to look in the cell and he looked and the guy was asleep. That's what he says? That's what he says, okay? He also said, I'm digressing a bit, he also said that he was told that Jesse could not do his shift as a housing worker, that he was hot and burning up and that was around the beginning of the shift at 3 o'clock. Now, if you believe Berlinga that he did make his cell check 75 minutes later at 4.15, but there is some contradiction because the affidavits of Lofton and Short put the time that he was asked to check closer to 4 o'clock. So that's another factual question, was did the time that he was asked to check on him occur before or after he made his rounds at 4.15? He said he made his rounds at 4.15 and that he poked his head in and Good appeared to be sleeping and so forth. But there is some, again, different timelines and then I would refer to you that the Short made a decision, which should put inferences in our favor according to the case law and the district court really didn't hold on that, but I would submit that's another argument that I'm presenting for you to affirm the district court's decision. I just don't see where the factual dispute is exactly. Well, the factual, okay, the factual dispute arises from if you believe the prisoners, he delayed 5 to 7 minutes in checking on him. Okay. Assume that that is true. Okay. Assume that. And then we say that that's deliberate indifference. Per se. Per se. Even though, even if we assume, even if it's true that he had just looked in on the guy a few minutes before him, 10 minutes or whenever. Even if it's so, because there's a, as I think. You're basically saying that the 5 to 7 minute delay is per se deliberate indifference. When you hear what was told and, you know, they argued in their brief that he was never asked to check on, that's exactly wrong. You've got to assume our facts. He was clearly asked to check on. But we're trying to assume your facts. All right. Then you assume the facts is that when he's told that he's gurgling, that his color is green or his color is bad. That's enough for a lay person to get medical attention. And according to the case law that I've cited. It doesn't matter if he's just looked at the guy three minutes before him. But he didn't look at him. He didn't look at him. He only looked into the cell and appeared to be sleeping. He doesn't know if he was gurgling or his color was bad. He looked at him? Huh? In the cell? I mean, counsel, you say he didn't look at him. What? He says he did. He looked at him. Okay. He looked at him, but he would say he wouldn't have known all of those things that I just listed. Plus, that would be a dramatic change. If somebody's sleeping and then, you know, you're told that they're gurgling, their color is bad, and you need to go check on them. That's a big change. So it's your position that the, assuming the fact, assuming the correctness of the officer's testimony that he had just looked at him, that then this sudden onset of these symptoms, that would have been enough to put the ordinary, reasonable person on notice that there was a serious medical issue. That's your position? I think it would. Because I think that's a dramatic change, and I don't mean to, you know, argue about words, and I apologize to you. I didn't mean to argue about that, but I'm saying looking in as you're doing a cell check is not the same as hearing the things that he heard from the prisoners, and those are the facts that... You're basically saying, and I understand that once he got word that he was gurgling, he should immediately have dropped everything and gone down there, despite the earlier situation. Because it's a dramatic change, and there's evidence, there was no evidence that he was engaged in anything else. He said it was a quiet burglary. The end of itself is deliberate indifference. That is correct. That is my argument. Questions? I think we have none. Thank you. Just a couple points on rebuttal. First of all, I think it was clear from the discussion, for purposes of this appeal, unlike in the district court, we are conceding the five to seven minutes. But we believe there is no evidence to suggest that Berlinga perceived a serious risk of medical injury until he got to the cell, and the fact that he observed this inmate sleeping, there was no reason for him to suspect the ingestion of heroin. You said that there's nothing to suggest that he perceived. Should we be looking at whether he perceived or whether he should have perceived? The test is both objective and subjective, and the subjective component has to do with his perception. It's not only that there's evidence from which someone could draw an inference, he has to have drawn the inference. That's what the case is saying. Does he have to satisfy both of those, the subjective and the objective? He does. He does. And it seems to us on this record that just simply can't be shown. And then, even getting beyond that, when you get to the qualified immunity context, particularly under the Supreme Court's recent case law, there simply is no case law that's been cited. I was rereading, in fact, the cases cited in the plaintiff's brief for this point about the delay, and I actually think they're supportive of our position. I wanted to mention, if you look at the Weaver v. Shadone case, the medical symptoms there were much worse, and the court said the officers didn't know about the cocaine, and they were not going to be held liable. If you look at the Watkins case, where there was pink foamy drool, again, the court rejected liability. There are cases cited in our brief, and I just wanted to point to, in Marlita, the inmate was vomiting, asking for treatment, convulsing, and treatment wasn't provided for days. Those are the kinds of cases that the court has said, yes, that's going to state a claim. On the other hand, there are these cases, even with foamy drool in one of them, where the court has said, no, that's not enough, and the officer should have been cloaked with immunity. Counsel, have the parties here tried to settle this case? We had discussions, both at the trial court level, and the case went through the mediation. In our court? Yes. I have to say, in fact, we were talking about it before court this morning. My clients very much want to stand behind their deputy in this circumstance. They believe that he is a good deputy, and that he didn't do anything here for which he should be held liable. That's where we are. Sometimes good people make bad mistakes. Well, and Your Honor, the Supreme Court has said... I understand. That's the posture of the case now, so the fact that they love their deputy, I mean, that's fine. Maybe he didn't do anything wrong at all, but there is some risk. Well, I understand the risk, believe me. I just want to address the point about mistakes, though. I think it's very, very important to keep in mind that the main claim in this case is that, as I repeatedly said, an honest mistake is not a grounds for liability. So even if, when Berlinga was told there's this foamy substance and this gurgling, heavy snoring, and he mistakenly concluded this was something he needed to check on, but he didn't need to run, it seems to me that would not rise to the level of a constitutional claim, and certainly there's no case law that would have informed him of that. You don't think you can settle it in the next few days, I take it? No. You're in stone about it. I can only do what I can do. I want you to understand, though, my comment about sometimes good people make bad mistakes is in response to your comment that your client believes that this is a good deputy, and my client's not dispositive of this case. No, I was only making that point with respect to the discussion about the settlement and some of the considerations, and there are others which I won't go into. Thank you, counsel. I think we have the arguments in hand. The case will be submitted.